IN THE MATTER OF THE APPLICATION OF DANIEL W. TALCOTT, JR., FOR A FERRY LICENSE.

*License to run a ferry — notice to the owner of the adjoining land must be given —*
*1854, chap. 226 — 1 R. S., chap. 16, art. 7, tit. 2; 2 R. S. (7th ed.), 1268.*

Where an application is made, under chapter 226 of 1854, for a license to run a ferry between the city of Troy and the village of West Troy by a person, other than the owner of the land through which the highway adjoining the ferry runs, the commissioners cannot grant the application without due proof that notice has been given by the applicant to such owner, at least eight days before, of his intention to make such application.

The objection that no such notice has been given may be raised by a person to whom a license to run a rival ferry has theretofore been granted.

CERTIORARI to review an order and decision of the board of commissioners to regulate ferries between the city of Troy and the village of West Troy, by which a license was granted to the respondent.

*La Mott W. Rhodes,* for the appellant.

*Samuel Foster,* for the respondent.

LEARNED, P. J.:

Section 5 of chapter 226, Laws of 1854, which makes the county judges of Albany and Rensselaer a board of commissioners to establish ferries, declares that this licensing shall be "subject to the provisions of title 2 of article 7 of chapter 16 of the first part of the Revised Statutes." This title 2 is, "Of the regulation of ferries;" and gives power to the County Court to license. Sections 2 and 3 declare that no license shall be granted to any person other than the owner of the land through which the highway adjoining the ferry shall run; unless such owner shall neglect to apply for such license, after notice as therein provided; and they provide, also, that if application be made by a person other than the owner, it shall not be granted until proof of eight days' notice of such application to the owner. Those provisions then apply to the present case.

It appears by the papers that the proposed ferry was to be from a point on the premises of the Burden Iron Company to a point near the foot of Mansion street, in West Troy. It does not appear that the owners of the property on the east side, the Burden Iron Company, or that the owners of the land on the west side through which Mansion street runs, apply for this ferry.

Counsel appeared to oppose on behalf of another ferry and also on behalf of a landowner adjoining Mansion street. And objection was taken that no notice had been served upon the landowners.

The respondent claims that, as the act of 1854 requires notice to the mayor of Troy and the president of West Troy, the notices required by the Revised Statutes are not necessary. But we do not agree with this view. The object of the notice to the owner is that he may avail himself of his right as owner if he chooses to do so. The object of the notices to the mayor and the president is that the public may be protected in the granting of the license. (Sec. 4 of the act.)

The twelfth section of the act further authorizes one who has received a ferry license to obtain a certificate from the commissioners (the county judges) as to the necessity of lands, etc., for ferry-houses, etc., and then authorizes the taking of such lands as land is taken for railroads. And the respondent's counsel urge that this provision protects the riparian owner, and prevents the taking of his land without due compensation. But we think that the Revised

Statutes intended more than this. They recognized not merely the right of the owner to compensation for his land, but also his right to the benefit and advantage of running the ferry, if he chose to do so and could give the proper security. This benefit we think the owner still has under the act of 1854. It may be a valuable right to run a ferry, and if the owner is willing to run the ferry and can run it, he should be allowed to do so; at least he should have the opportunity afforded by the eight days' notice.

Again, the respondent urges that no one can complain of this want of notice except those who were entitled to it. The parties who bring this *certiorari* are owners of a ferry in the neighborhood and claim to be injured by the decision. It seems to us that they may lawfully insist on any of the positive regulations of the statute. It could hardly be claimed that the commissioners might act without the notice to the mayor and to the president required by the act of 1854. The language of the Revised Statutes is equally imperative. " No license shall be granted," etc. " The court shall not grant a license unless " etc. And if a notice be necessary to the mayor and president, on the same principle it is necessary to the owner when he is not himself the applicant.

We are of the opinion that the order should be reversed and the application denied, without prejudice to its renewal on proper notice.

Present — LEARNED, P. J., BOARDMAN and POTTER, JJ.

Decision of commissioners reversed, with fifty dollars costs and with disbursements.